Filed 2/10/23  Curamus Management v. Swiech CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CURAMUS MANAGEMENT, INC., et al., | D079075 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2018-00032690-CU-DF-CTL) |
| EUGENE SWIECH, | |
| Defendant and Appellant; | |
| CHRISTINA M. DENNING et al., | |
| Objectors and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

G10 Law and Daniel T. Watts for Defendant and Appellant.

Mazur & Mazur and Janice R. Mazur for Plaintiffs and Respondents Aaron Levine and Curamus Management, Inc.

Denning Moores, Christina M. Denning and Brian M. Cook for Objectors and Respondents Denning Moores, APC and Christina M. Denning.

Turnbow Law Firm and Christopher William Turnbow, for Objector and Respondent Christopher William Turnbow.

This lawsuit originated because a homeowners association did not trim certain trees to Eugene Swiech's satisfaction despite Swiech not being a member of that association. Nonetheless, incensed because his ocean view was obstructed, Swiech created a website wherein he repeatedly criticized the company that managed the homeowners association, Curamus Management, Inc. (Curamus), as well as Curamus's owner, Aaron Levine. Curamus and Levine (together Plaintiffs) then sued Swiech. After retaining new counsel and filing an amended complaint, Plaintiffs eventually dismissed their lawsuit against Swiech, and the superior court entered judgment in Swiech's favor.

However, during the course of litigation, Swiech filed three motions for sanctions under Code of Civil Procedure[1] sections 128.5 and 128.7. The superior court denied all three motions.

After final judgment was entered in his favor, Swiech filed this appeal, challenging the superior court's denial of his three motions for sanctions, arguing the court abused its discretion. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 2018, Plaintiffs filed suit against Swiech, alleging causes of action for defamation, intentional infliction of emotional distress (IIED), and intentional interference with economic advantage. At that time, Denning

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

Moores, APC and Christina Denning represented Plaintiffs.[2]  The relevant allegations in the initial complaint were as follows:[3]

Levine is the owner of Curamus, which manages small homeowners associations in San Diego.  Stratford Woods Homeowners Association (Association) is one of Curamus's clients.  The Association is located near the coast in Del Mar.  Swiech lives in Del Mar "up the hill from the Stratford Woods community," which is run by the Association.  Swiech does not live in the Stratford Woods community and is not a member of the Association.

For several months, Swiech asked the Association to trim trees that were blocking his view.  The Association did not trim the trees to his satisfaction.  After Swiech learned that Curamus managed the Association, Swiech retaliated against the Association, Curamus, and Levine.  Swiech contacted Plaintiffs on numerous occasions demanding the trees be trimmed and threatening legal action and negative Yelp reviews.  Neither Curamus nor Levine had the authority to order the Association to trim the subject trees.

Swiech began an online campaign against Curamus and Levine.  He created a "fake website pretending to be Curamus . . . on which he . . . made and continues to make false and misleading statements."  The website, curamus-management.com, includes an image of Levine drinking wine as well as Curamus's logo, which has been "doctored to read 'We Mess Up

[2]    We refer to Denning Moores, APC as "Denning," which includes the attorneys belonging to that firm.  When necessary, we will refer to individual attorneys at Denning, and thus, we will use the attorneys' last names.  To avoid confusion, we will refer to Christina Denning by her first name.

[3]    We take our summary of the allegations from Swiech's previous appeal. (See *Curamus Management, Inc. v. Swiech* (Oct. 9, 2019, D074990) [nonpub. opn.].)

Curamus Management.' " The website also includes the following statements about Curamus: "We Mess Up," "Did not do a good job with East Bluff," "Not doing a good job with Stratford Woods," "No respect for the community," "Does not take time to work with people," "Not good with costal [*sic*] properties," and "Does not control costs well."

Swiech also expressed his displeasure with the Association's refusal to trim the trees to his liking through numerous e-mails to Levine. Swiech's language is harsh and, at times, threatening. For example, his e-mails have included the following: "You and Stratford Woods are the laughing stock of Del Mar"; "Trees are ready to fall"; "Time to Yep [sic]"; "Website getting hundreds of hits"; "LEAVE DEL MAR !!!"; "Can you say search engine optimization"; "Stratford Woods HOA Del Mar now 1st or 2nd hit"; "The story will be told!!"; "I will update the [sic] both websites with more information including my opinions"; "You and Ben [The Association's president] are what we don't want in Del Mar"; "Left a message. You guys WILL NOT BLOCK MY VIEW. The issue WILL NOT GO AWAY !!"; "The issue regarding the trees will escalate next year. Please inform Ben that legal action is likely to protect our interests. After researching HOA finances it is easy to conclude the HOA is broke and defuncted [sic]. Going directly after the 18 people that live there is not out of the question"; "Based on your reserves you cannot afford litigation"; and "Tell Ben to go FUCK himself . . . ."

Swiech also used his Facebook page to complain about Curamus, Levine, and the Association. For example, he posted, "Trim the trees" and "These people suck."

Plaintiffs sent a cease and desist letter to Swiech demanding that he take down the website and stop defaming them. Swiech refused to comply with the demand; therefore, Plaintiffs brought suit against Swiech.

4

After answering the complaint, Swiech filed a motion to strike the complaint under section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. The superior court denied the motion. On appeal, we affirmed the order, agreeing with the superior court that Swiech's posts on his website did not concern a matter of public interest. (See *Curamus Management, Inc. v. Swiech*, *supra*, D074990.)

A remittitur was issued on December 12, 2019. Eight days later, Swiech filed a motion for judgment on the pleadings, which was set to be heard on April 10, 2020.[4] While that motion was pending, Swiech filed a motion under section 128.7 wherein he sought sanctions in the amount of $30,363.22 in attorney fees and $1,225.55 in costs. The motion was directed at Curamus, Levine, and Denning.

In the motion for sanctions, filed February 14, 2020, Swiech argued sanctions were warranted because: (1) the lawsuit lacked an "arguable basis in fact or law"; (2) the claims were "objectively frivolous"; (3) the claims were based on Swiech's opinions that are constitutionally protected speech; (4) the complaint was filed for an improper purpose; and (5) Plaintiffs refused to dismiss the meritless lawsuit.

About a month after the sanctions motion was filed, Turnbow Law Firm and C. William Turnbow (together Turnbow) substituted into the case as counsel of record for Plaintiffs. Curamus and Levine then filed a motion for leave to file an amended complaint, an opposition to the motion for sanctions, and an opposition to the motion for judgment on the pleadings.

---

4 The hearing on the motion for judgment on the pleadings was continued to July 31, 2020.

5

Although counsel of record for Plaintiffs when Swiech's motion for sanctions was filed, Denning did not file any pleading in response to the motion for sanctions.

On July 31, 2020, the court issued a tentative ruling granting the motion for sanctions as well as the motion for judgment on the pleadings.[5] In that tentative ruling, regarding the defamation cause of action, the court faulted Plaintiffs for failing "to address the case law as to opinions being protected or explaining how any reasonable attorney could believe the statements [were] representations of provable facts rather than opinions." As to the IIED claim, the court noted that Plaintiffs relied on Swiech's "non-actionable 'derogatory website' " as well as harassment of Levine, which included " 'threatening legal action and negative Yelp reviews' " and the posting of " 'negative comments about Curamus on Yelp under a fake account.' " The court tentatively found "[n]o reasonable attorney would believe these facts are sufficient to support a claim for IIED." Finally, concerning the claim for intentional interference with economic advantage, the court tentatively stated: "No reasonable attorney would believe the opinions expressed were actionable. Therefore, it would be unreasonable to rely upon such alleged interference to support a claim for intentional interference with economic advantage."[6]

---

[5] The tentative ruling also addressed Swiech's motion to strike or tax costs. Because that motion plays no role in the issues before us, we eschew any further discussion of it.

[6] We provide some of the substance of the superior court's tentative ruling on Swiech's first motion for sanctions not because of its legal significance on the appeal before us but simply to provide context for the supplemental pleadings filed by Plaintiffs and Denning after the hearing on that sanctions motion.

At the hearing on Swiech's motions, Christina appeared along with Turnbow and counsel for Swiech. The court continued the hearing on the motions until September 4, 2020 and allowed the parties to submit supplemental declarations.

Levine filed a supplemental declaration in support of the oppositions to the motion for judgment on the pleadings and the sanctions motion. In that declaration, Levine detailed three "provably false" statements that Swiech allegedly made and included exhibits in support of the assertions.

Brian Cook, an attorney with Denning, also submitted a declaration after the hearing on Swiech's motion for sanctions. Cook appeared at the hearing on Swiech's anti-SLAPP motion. He noted that after the court denied the anti-SLAPP motion, Cook communicated with Swiech's attorney, Cynthia Marks of Slattery, Sobel & Decamp, on "several occasions" to try to resolve the dispute. Those efforts were not successful.

Cook stated that Swiech changed counsel and was represented by Ryan Darby in mid-October 2018. After Darby substituted in as counsel of record for Swiech, Denning reissued subpoenas to Yelp.com and GoDaddy.com to establish that "Swiech was the author of a defamatory Yelp posting against Curamus." Denning withdrew the subpoenas after Darby informed Cook that Swiech was appealing the superior court's order denying his anti-SLAPP motion. Cook pointed out that Darby never discussed any motion for sanctions although Darby represented Swiech for over a year.

After this court affirmed the superior court's order denying the anti-SLAPP motion, Swiech replaced Darby with Daniel Watts. Cook talked with Watts on November 6, 2019, two days before a status conference. During that call, Watts informed Cook that Swiech would be filing a motion for judgment on the pleadings. Cook responded that Plaintiffs would again

7

reissue subpoenas to Yelp.com and GoDaddy.com and intended to amend the complaint. Cook and Watts also discussed potential ways to settle the dispute. Cook explained that the case would only get more expensive for Swiech because he had lost his appeal of the order denying his anti-SLAPP motion and could not recover his attorney fees. Cook "then *offhandedly* made a comment about the only other way for [Swiech] to recover money would be from a [section] 128.7 motion." However, Cook declared that he did not believe "such a motion was viable given the circumstances of the case and how egregious Mr. Swiech's behavior had been throughout the case." Cook stated he was joking and that for the year and half the case had been litigated, no attorney had ever raised the specter of a sanctions motion.

Over a month later, on December 23, 2019, Watts's office e-mailed Cook a copy of Swiech's motion for sanctions. Nevertheless, Cook talked to Watts "at least a couple times to further discuss how to resolve the case short of protracted litigation" and e-mailed a settlement proposal before the January 10, 2020 status conference. At the status conference, Cook and Watts told the court that a settlement demand had been made and suggested the court continue the status conference to allow settlement discussions to continue. The court agreed.

However, according to Cook, Watts did not timely respond to the settlement demand. Instead, Cook e-mailed Watts multiple times asking for a status update. Finally, on February 7, 2020, Watts informed Cook that Swiech had rejected the settlement proposal. Facing two upcoming trials, Cook told Levine that Denning could no longer represent Plaintiffs and assisted Plaintiffs in finding new counsel.

Christina Denning also submitted a declaration after the initial hearing on Swiech's motion for sanctions. In her declaration, Christina

8

correctly identified the elements for the causes of action of defamation,[7] IIED,[8] and intentional interference with prospective economic advantage.[9] Christina then explained why she believed each cause of action was warranted by the facts known to her at the time Denning filed the complaint on behalf of Plaintiffs.

For example, regarding the defamation claim, Christina identified the following statements as actionable: " 'Did not do a good job with *East Bluff*' " and " '[a] simple construction project at [S]tratford [W]oods has taken over a month because *the contractors aren't getting paid.*' " She explained that Curamus never worked on or for East Bluff, and Curamus always paid its contractors. As to the IIED claim, Christina argued that

---

[7] A defamation action based on libel as alleged in the instant matter includes the following elements: " '[A] false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injury him in his occupation.' " (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527, quoting Civ. Code, § 45.)

[8] "The elements of the tort of [IIED] are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." ' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

[9] "Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

9

Swiech's creation of a fake website, on which he purported to be Plaintiffs and published defamatory statements intended to injure Levine and Curamus, was outrageous conduct "undoubtedly beyond all bounds of decency tolerated by society." And, concerning the claim for intentional interference with prospective economic advantage, Christina emphasized that Plaintiffs had an economic relationship with the Association that created the probability of a future economic relationship and Swiech engaged in conduct to disrupt that relationship as well as other relationships Plaintiffs had with various homeowners' associations.

In addition, Christina declared that Swiech also started to harass Denning by posting negative reviews about Denning.

Swiech filed objections to Cook's and Christina's declarations to which Denning field a response.

The continued hearing on Swiech's motion for sanctions and motion for judgment on the pleadings occurred on September 4, 2020.[10] The court took the matter under submission and issued a minute order four days later. In that order, the court denied Swiech's motion for sanctions. The court explained:

> "Notwithstanding the above analysis [explaining why the court believed Plaintiffs' causes of action lacked merit], Plaintiffs' former attorneys have submitted declarations to explain certain facts that satisfy the Court that their actions should not be sanctioned. Plaintiffs' former attorneys had reason to believe that Swiech had posted a negative Yelp review which did make factual representations about Curamus—that it does not care about the people in Del Mar and that it had not paid the contractors who work for it. Further, while the statement that Curamus 'did not do a good job with East Bluff'

---

[10] It does not appear that a transcript of the September 4, 2020 hearing is in the record.

appears to be an opinion, Plaintiff Levine never worked at East Bluff, which could make the statement a misrepresentation. Further, the website's inclusion of the 'copyright' at the end of the page in the name of Eugene Swiech was added after Plaintiffs' cease and desist letter. Finally, Swiech made the following statements to Plaintiffs: 'You and Stratford Woods are the laughing stock of Del Mar,' 'Website getting hundreds of views' when Plaintiff Levine relied almost exclusively on SEO [search engine optimization] and positive reviews for marketing, 'LEAVE DEL MAR,' 'Tell Ben to go FUCK himself,' and '[y]ou guys WILL NOT BLOCK MY VIEW. The issue WILL NOT GO AWAY!!' These statements, coupled with the fact Swiech created a fake website and used SEO to bolster visits to the website, indicate Swiech was intentionally trying to harm Plaintiff Levine and his business. Plaintiffs' former attorneys represent that Swiech's actions actually interfered with Plaintiff Curamus's relationship with Stratford Woods. At a minimum, Plaintiffs' former attorneys had reason to believe they could amend the complaint."

The court also granted Swiech's motion for judgment on the pleadings but gave Plaintiffs ten days to file an amended complaint.

However, five days before the court ruled on Swiech's motion for sanctions, Swiech filed a second motion for sanctions aimed at Plaintiffs and their new counsel, Turnbow. In that motion, Swiech asked for sanctions in the amount of $50,343.22 in attorney fees and $1,225.55 in costs. Swiech claimed sanctions were warranted because Plaintiffs and Turnbow: (1) filed and prosecuted a frivolous complaint; (2) refused to withdraw the complaint; (3) filed frivolous court filings (oppositions to the motion for judgment on the pleadings and the first sanctions motion); (4) made an "objectively unreasonable" demand for $5,000 in their opposition to the first motion for sanctions; and (5) filed an "objectively unreasonable motion for leave to file an amended complaint."

11

On September 18, 2020, Plaintiffs filed a first amended complaint, consisting of causes of action for intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, and injunctive relief. Plaintiffs based their causes of action on Swiech's "conduct, including without limitation: creating and publishing the Fake Website; enabling search engine optimization for the Fake Website; publishing provably false and misleading misrepresentations; and harassing and threatening Plaintiffs."

Almost two months later, Swiech filed his third motion for sanctions. This final sanctions motions was based on Plaintiffs filing a first amended complaint.[11] Plaintiffs filed a combined opposition to Swiech's second and third motions for sanctions.

Before the hearing on Swiech's second and third motions for sanctions, the court issued a tentative ruling denying both motions. At the hearing on the motions, Swiech's counsel focused on Plaintiffs' reliance on the fake website and the postings on that website as the basis for their causes of action. Indeed, counsel emphasized that the motions for sanctions were "directed solely to the fake website, not the Yelp allegations[.]" Further, Swiech's counsel pointed out that the court could grant the motions for sanctions and simply strike the allegations about the fake website from the first amended complaint and not award any money sanctions. Plaintiffs submitted on the tentative, and the court took the matter under submission.

---

11   Swiech also filed an anti-SLAPP motion in response to the first amended complaint. The court denied that motion. Swiech did not appeal the court's order. As such, we do not discuss the anti-SLAPP motion any further.

On March 22, 2021, the court issued a minute order denying the second and third motions for sanctions. The court stated:

> "On September 8, 2020, this Court denied Defendant's motion for sanctions. On September 8, 2020, this Court granted Defendant's Motion for Judgment on the Pleadings as to all causes of action, but granted 10 days leave to amend. This Court found the allegations as to the fake Curamus website could not be the basis for liability because it expressed opinions, not representations of provable facts. For essentially the same reasons this Court denied Defendant's motion for sanctions on September 8, 2020, the Court denies Defendant's motion filed on September 3, 2020 (this Court had not yet [granted] Defendant's Motion for Judgment on the Pleadings). Plaintiffs' counsel had reason to believe that Swiech had posted a negative Yelp review which did make factual representations about Curamus."

The court also addressed Swiech's argument regarding Plaintiffs reliance on the fake website and Swiech's postings on that website. The court explained:

> "The Court finds that any claims based solely on allegations as to the fake website, consistent with its prior ruling, are not warranted by existing law. This Court already found the allegations as to the fake website do not establish any legal liability. None of the allegations present any representation of provable fact, but are opinions or parody of Curamus.

> "Notwithstanding the above, Plaintiffs have continued to include allegations in the FAC regarding the fake website. While the allegations regarding the fake website may not be stricken by the anti-SLAPP statute, they do not form liability for the causes of action on their own. It appears to be for this reason that Plaintiffs included the allegations with other allegations to support their interference causes of action and request for injunctive relief. Plaintiffs continue to assert, notwithstanding this Court's express finding, that the fake website makes provable statements of

13

fact. The website includes the following statements: 1. 'We Mess Up,' 2. 'Did not do a good job with East Bluff,' 3. 'Not doing a good job with Stratford Woods,' 4. 'No respect for the community,' 5. 'Does not take the time to work with people,' 6. 'Not good with costal [sic] properties,' 7. 'Does not control costs well,' and 8. The image of Curamus's logo, altered to include the text 'We Mess Up-Curamu Management.' While the Court continues to find that these statements on the fake website are not provable statements of fact, the Court does not believe 'any reasonable attorney would agree' that the statements are not provable statements of fact. There is some room for disagreement. To the extent this contradicts this Court's prior findings, the Court notes it has the 'inherent authority to change its decision at any time prior to the entry of judgment,' and it may do so *sua sponte*. (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156 [(*Kritt*)].) This Court has not yet considered whether the allegations in the FAC, which include allegations of false statements in Yelp reviews, are frivolous.

"Notwithstanding the above, the Court believes that no reasonable attorney would believe claims based solely on the fake website have any merit after contemplating this Court's rulings to date—Plaintiffs should remove any 'legal contentions' that the fake website forms any basis for liability. If Plaintiffs do not voluntarily remove such allegations going forward, the Court will strongly consider, and most likely will, sanction Plaintiffs."

Swiech subsequently filed a motion for judgment on the pleadings. Three days later, Plaintiffs filed a request for dismissal without prejudice of the entire action. On May 7, 2021, the court entered judgment of dismissal wherein it determined that Swiech was the prevailing party under section 1032 and awarded Swiech reasonable costs incurred in the action.

Swiech timely appealed, challenging the superior court's orders denying the three motions for sanctions.

DISCUSSION

I

MOTIONS FOR SANCTIONS

A. Swiech's Contentions

Swiech argues the superior court abused its discretion in denying the motions for sanctions under sections 128.5 and 128.7. We disagree.

B. Standard of Review and Applicable Law

Under section 128.7, when a party presents a document to the court, the party implicitly certifies that (1) the document is not being presented primarily for an improper purpose, (2) the legal contentions in the document are nonfrivolous, and (3) the allegations or denials of fact in the document are warranted by the evidence. (*Id.*, subd. (b).) Section 128.7 authorizes the court to impose sanctions, including attorney fees, for violating those implied certifications. (*Id.*, subds. (c), (d); see *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.) To obtain sanctions, the movant must show that the opposing party's conduct was objectively unreasonable. (*Peak*, at p. 440.) "A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Ibid*.).) Section 128.5 authorizes the court to impose sanctions, including attorney fees, for bad faith actions or tactics "that are frivolous or solely intended to cause unnecessary delay." (*Id.*, subd. (a).)

We review a trial court's ruling on a motion for sanctions for abuse of discretion. (*Primo Hospitality Group, Inc. v. Haney* (2019) 37 Cal.App.5th 165, 174 [sanctions motion under § 128.7]; *Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893 [sanctions motion under § 128.5].) We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. (*Shelton v. Rancho Mortgage & Investment Corp.*

15

(2002) 94 Cal.App.4th 1337, 1345.) To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867 (*Kurinij*); see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 ["The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."].)

### C. Analysis

Swiech challenges two different orders: a minute order dated September 8, 2020, wherein the superior court denied the first sanctions motion; and a minute order dated March 22, 2021, in which the court denied the second and third motions for sanctions. Although Swiech makes specific arguments in his challenge to each of the orders, at a more foundational level, he insists the denials of his motions for sanctions are inconsistent with two tentative rulings. The first tentative ruling was issued on September 7, 2018, regarding Swiech's anti-SLAPP motion. In that tentative ruling, the court tentatively granted the motion. The second tentative ruling on which Swiech relies is dated July 31, 2020, wherein the court tentatively granted Swiech's first sanctions motion. Swiech's reliance on these tentative rulings is misplaced.

The court never adopted the tentative ruling on the anti-SLAP motion. Instead, the court took the matter under submission and requested further briefing from the parties. The court then issued a minute order on September 26, 2018, denying Swiech's anti-SLAPP motion. In that order, the court did not reach the merits of Plaintiffs' claims against Swiech. Rather, the court found that Swiech did not show that his actions fell under the protections of the anti-SLAPP statute. We affirmed the court's order on

16

appeal. (See *Curamus Management, Inc. v. Swiech, supra*, D074990.) Consequently, the September 7, 2018 tentative ruling is of no legal significance here.[12]

Similarly, the other tentative ruling on which Swiech relies offers him no help here as well. The court issued that tentative ruling granting the first motion for sanctions on July 31, 2020. However, at the July 31 hearing, the court continued the hearing on the sanctions motion until September 4, 2020, and allowed the parties to submit supplemental declarations. The court did not adopt the July 31 tentative ruling as the order of the court.

On September 4, 2020, after considering the supplemental pleadings filed and entertaining argument from the parties, the court took the matter under submission. Four days later, it issued a minute order, denying the first sanctions motion. In the September 8 minute order, the court did not adopt its July 31 tentative ruling. As such, that tentative ruling is of no legal significance here. It never became the order of the court. At most, the tentative ruling provided insight as to what the court was thinking on July 31, 2020. Further, the tentative ruling offers context as to why Levine, Cook, and Christina filed supplemental declarations. But the tentative ruling, which the court never adopted as its final ruling, does not provide any

---

[12] We found one possible reference to the tentative ruling on the anti-SLAPP motion in a subsequently issued minute order. In the September 8, 2020 minute order, while discussing the first sanctions motion, the superior court faulted Plaintiffs for not addressing the case law holding that opinions are protected under the First Amendment. To emphasize this point, the court added: "As this Court already found when considering the merits of Plaintiffs' allegations on Defendant's anti-SLAPP motion, 'Plaintiffs have not shown the claims are legally sufficient - the statements are opinions.' " This possible brief reference to the court's anti-SLAPP analysis is not the talisman that transforms the September 7, 2018 tentative ruling to a final order of the superior court or that otherwise requires us to consider that tentative ruling.

17

support for Swiech's arguments here. To the extent he relies on the September 7, 2018 tentative ruling or the July 31, 2020 tentative ruling to support his contentions on appeal, we summarily reject those arguments.[13]

In denying the first motion for sanctions, the superior court provided a detailed explanation why it believed sanctions were not warranted. In doing so, the court referenced Cook's and Christina's respective declarations. It noted that the attorneys had reason to believe that Swiech posted a negative Yelp review that involved factual representations about Curamus. The court pointed to actions that Swiech took in response to Plaintiffs' cease and desist letter. In addition, the court noted that Swiech's statements to Plaintiffs coupled with Swiech's creation of the fake website and search optimization activities "indicate[d] Swiech was intentionally trying to harm" Plaintiffs. Finally, the court determined, "[a]t a minimum, Plaintiffs' former attorneys had reason to believe they could amend the complaint."

Here, Swiech ignores most of the court's findings and does not argue that those findings are not supported by substantial evidence.[14] Rather, he focuses on Christina's declaration, arguing the court should have disregarded

_____

[13] Moreover, Swiech's quoting from the September 8, 2018 and July 31, 2020 tentative rulings and acting as if the court somehow adopted the reasoning of those tentative rulings borders on misrepresentation. Throughout his opening brief, he treats these rulings as containing findings the court never made. He compounds this distortion by claiming, without support, that the "court retained all of its findings from its earlier orders" to imply the appealed minute orders are similar in content to the tentative rulings. Such an assertion is patently false.

[14] Swiech does argue that the court's order denying the first sanctions motion was inconsistent with prior tentative rulings. As discussed *ante*, the two tentative rulings on which Swiech relies were never adopted by the court as final orders and cannot be used to establish that the court abused its discretion in denying the first motion for sanctions.

that declaration as inadmissible legal argument and opinion by a non-expert. To this end, Swiech notes that he "filed evidentiary objections to Denning's declarations, which the trial court did not rule on." He then claims to raise "the objections again here by this reference." That is the extent of Swiech's reference to and argument regarding the superior court's alleged failure to rule on his objections in his opening brief. He offers neither a discussion of those objections nor any case law to support his contention that his objections should have been sustained. This is not sufficient to properly raise the issue on appeal. (*Duffey v. Tender Heart Home Care Agency, LLC* (2019) 31 Cal.App.5th 232, 251, fn. 17; *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 854.) Thus, we deem this argument waived.[15]

Next, Swiech argues that even if the superior court properly considered Christina's declaration, it should have granted the sanctions motion because Christina conceded that the lawsuit was filed for an improper purpose, namely Christina found Swiech " 'obnoxious' " for writing " 'offensive' " comments on Denning's Facebook page. We do not share Swiech's reading of Christina's declaration. Nowhere in the declaration does Christina state that she filed the lawsuit on behalf of Plaintiffs because she found Swiech obnoxious for writing offensive comments on Denning's Facebook page. Indeed, the initial complaint was filed on July 2, 2018, and Christina noted

---

15    In the reply brief, Swiech discusses in detail the objections and argues why we should exclude certain portions of Christina's declaration as well as Cook's declaration. By waiting to discuss the objections in depth until the reply brief, Swiech has deprived Plaintiffs, Denning, and Turnbow the opportunity to respond to such arguments. Accordingly, Swiech's failure to substantively discuss his objections to the subject declarations until his reply brief waives this argument. (See *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

that Swiech posted "insulting" and "offensive" reviews of Denning on November 4 and December 14, 2018. Thus, Swiech's derogatory statements about Denning could not have been the impetus for the filing of the complaint, which occurred months earlier.

In short, the court made certain factual findings based on Cook's and Christina's declarations in opposition to the first motion for sanctions. Swiech largely does not address the court's findings or the evidence on which it relied. Instead, Swiech asks us to consider the superior court's tentative rulings while he ascribes untoward (but unfounded) motivations to the filing of the initial complaint. On this record, we cannot say the court's order denying the first motion for sanctions constituted a manifest miscarriage of justice. (*Kurinij*, *supra*, 55 Cal.App.4th at p. 867.) Consequently, the court did not abuse its discretion in denying the first motion for sanctions.

Swiech's arguments challenging the March 22, 2021 minute order are no more persuasive. For example, Swiech contends that his second sanctions motion was aimed at Plaintiffs' motion for leave to file a first amended complaint.[16] And Swiech asserts that the proposed amended complaint was based on the fake website, which the superior "court had said was constitutionally protected speech in September 2018 . . . and July 2020[.]" However, Swiech again refers to the tentative rulings. The superior court never adopted those rulings; thus, those tentative rulings cannot support

---

[16] As set forth *ante*, Swiech claimed the second sanctions motion was aimed at five separate acts of Plaintiffs and Turnbow. In his opening brief, he focuses on Plaintiffs' motion for leave to file an amended complaint. He neglects to discuss the other alleged justifications for sanctions. Thus, he has waived any arguments related to those justifications on appeal. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 96.)

20

Swiech's argument that Plaintiffs and Turnbow should have been sanctioned for filing a motion for leave to amend the complaint.

In addition, Swiech faults Plaintiffs and Turnbow for failing to withdraw the motion for leave to amend after the court issued the September 8, 2020 minute order. Swiech insists the superior court "made yet another finding that those claims [based on the fake website] were frivolous." Yet, nowhere in the September 8 minute order did the court find that the claims were frivolous. Swiech cites to four pages of the minute order, but does not point to any specific sentence in which the court used the word "frivolous" to describe the causes of action in the original complaint.

Further, in the September 8 minute order, the court granted Swiech's motion for judgment on the pleadings, noting that "[t]he allegations are insufficient to support the causes of action included in the operative complaint." Belying Swiech's argument here, the court also addressed Plaintiffs' motion for leave to file an amended complaint. The court observed:

> "Plaintiffs are incorrect that the filing of a motion for leave to amend moots this motion. 'Unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion [ . . . ] Liberality in permitting amendment is the rule . . . .' (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 303-304.) However, Plaintiffs have the burden of proving a reasonable possibility of amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiffs have not indicated how [they] could amend, but the motion for leave to file an amended complaint indicates Plaintiffs may be able to amend the complaint. Plaintiffs are granted 10 days leave to amend."

Therefore, the court explicitly stated that, based on Plaintiffs' motion for leave to amend, Plaintiffs had 10 days to file an amended complaint. Yet, despite the clear dictates of the court, Swiech now argues Plaintiffs and

Turnbow should have been sanctioned for failing to withdraw their motion to amend after the court specifically granted them 10 days to file an amended complaint. Such an argument rings nonsensical.

Further, Swiech fails to address the court's explanation as to why it denied the second sanctions motion: "For essentially the same reasons this Court denied Defendant's motion for sanctions on September 8, 2020, the Court denies Defendant's motion filed on September 3, 2020 (this Court had not yet [granted] Defendant's Motion for Judgment on the Pleadings). Plaintiffs' counsel had reason to believe that Swiech had posted a negative Yelp review which did make factual representations about Curamus" Essentially, Swiech just ignores the court's reasoning and attempts to focus us on tentative rulings and specific portions of the record devoid of context. Such a strategy does not carry the day here. Therefore, on this record, Swiech has failed to show the court abused its discretion in denying his second motion for sanctions.[17]

Much like his arguments challenging the March 22, 2021 order as it relates to the second motion for sanctions, Swiech's contentions that the court abused its discretion in denying the third sanctions motion rest on tentative rulings and a selective reading of the record before us. For example, the following is Swiech's initial paragraph arguing the superior court abused its discretion denying the third motion for sanctions:

---

[17] Swiech also argues, without citation to the record, that by the time he filed the second sanctions motion, the court had dismissed the website claims with prejudice after issuing multiple warnings that the claims were " 'objectively unreasonable.' " Again, this assertion is not supported by the record. In fact, there is no order dismissing "the website claims with prejudice" as Swiech claims.

22

> "The court's order on Sanctions Motion #3 incorporated all
> the findings of the previous orders on Sanctions Motion #1,
> Sanctions Motion #2, the anti-SLAPP tentative, and the
> motion for judgment on the pleadings.  Two years of orders
> had now found the claims about the parody website to be
> frivolous.  The court had dismissed the website claims with
> prejudice.  The court had told Respondents in minute
> orders and tentative rulings that the website claims had no
> merit, and that 'no reasonable attorney' would keep
> pursuing them.  There was no excuse at this point."

The first sentence of the above paragraph is both inaccurate and unhelpful to Swiech's position here.  The March 22 minute order did state that it previously (1) granted Swiech's motion for judgment on the pleadings but granted leave to amend and (2) denied Swiech's first sanctions motion.  It did so in the context of explaining why it was denying the second sanctions motion.  Except for stating that it was denying the second sanctions motion for similar reasons as it denied the first sanctions motion, the court did not adopt the findings of the September 8, 2020 order.  Also, the March 22 minute order did not "incorporate all the findings" of the anti-SLAPP tentative ruling, and it is a blatant misrepresentation of the record to claim that it did so.  In fact, we note the Swiech does not point to any portion of March 22 order that incorporates any portion of the anti-SLAPP tentative ruling whatsoever.

The second sentence of Swiech's paragraph also is not supported by the record.  If the record contains two years of orders finding the claims based on the fake website frivolous as Swiech represents, we would expect Swiech to cite to these various orders.  Yet, he does not cite to a single minute order declaring Plaintiffs' claims to be frivolous.  Likewise, he does not provide any citation to the record to support his third sentence that the court dismissed

the website claims with prejudice.[18]  Indeed, our independent review of the record uncovered no order dismissing any of Plaintiffs' claims with prejudice.

Swiech reiterates the points of his first three sentences in his penultimate sentence wherein he emphasizes that Plaintiffs were on notice that the "website claims had no merit" and " 'no reasonable attorney' " would keep pursuing them.  He thus concludes Plaintiffs and their attorney had "no excuse at [that] point" to continue with the first amended complaint.

Swiech next quotes from the September 8, 2020 minute order, repeating statements that the court directed toward the three causes of action in the original complaint.  Based on that language, he argues that the first amended complaint violated the court's previous orders.  The record, however, does not support that contention.  Moreover, Swiech appears to gloss over the court's explanation regarding why it did not grant the third sanctions motion.  The court explained:

> "Plaintiffs have continued to include allegations in the FAC regarding the fake website. . . . It appears to be for this reason that Plaintiffs included the allegations with other allegations to support their interference causes of action and request for injunctive relief.  Plaintiffs continue to assert, notwithstanding this Court's express finding, that the fake website makes provable statements of fact. The website includes the following statements:  1. 'We Mess Up,' 2. 'Did not do a good job with East Bluff,' 3. 'Not doing a good job with Stratford Woods,' 4. 'No respect for the community,' 5. 'Does not take the time to work with

18    We acknowledge that in denying the first sanctions motion, the court found that the allegations in the original complaint were "objectively insufficient for a defamation claim," did "not arise to the level of being outrageous as a matter of law," and, regarding the claim of interference with prospective economic advantage, "were not wrongful by any legal measure." However, these findings related to the allegations and causes of action in the original complaint, not the allegations in the first amended complaint, which was the subject of the third sanctions motion.

people,' 6. 'Not good with costal [sic] properties,' 7. 'Does not control costs well,' and 8. The image of Curamus's logo, altered to include the text 'We Mess Up-Curamu Management.' *While the Court continues to find that these statements on the fake website are not provable statements of fact, the Court does not believe 'any reasonable attorney would agree' that the statements are not provable statements of fact. There is some room for disagreement. To the extent this contradicts this Court's prior findings, the Court notes it has the 'inherent authority to change its decision at any time prior to the entry of judgment,' and it may do so sua sponte.* [Citation.]" (Italics added.)

Thus, the court expressly stated that it found that reasonable minds could disagree regarding whether the posts on the fake website were actionable. More importantly, the court cautioned that if its finding contradicted any of its prior findings, it had changed its mind. And the court was permitted to do so. (See *Kritt*, *supra*, 75 Cal.App.4th at p. 1156.) As such, Swiech's attempt to use language from prior rulings as a justification for its claim that the court abused its discretion in denying the third sanctions motion necessarily fails.

In addition, much like he did not do in challenging the September 8, 2020 minute order, Swiech does not address the court's specific reasoning in denying the third sanctions motion. In fact, Swiech spends several pages of the opening brief arguing that the posts on the fake website were nonactionable opinions. Although the superior court ultimately agreed with this point, Swiech's argument ignores the court's finding that it did not "believe 'any reasonable attorney would agree' that the [posts] are not provable statements of fact" and that "[t]here is some room for disagreement." And the court's finding is not arbitrary or capricious and does not exceed the bounds of reason. (See *Link v. Cater* (1998) 60 Cal.App.4th 1315, 1321 [a court abuses its discretion when its actions are arbitrary or

25

capricious, or exceed the bounds of reason].)  For example, Plaintiffs and their attorneys represented that Plaintiffs never worked at East Bluff.  Yet, the post "Did not do a good job at East Bluff" implies that Plaintiffs did work at East Bluff and did not do a good job.  That statement could be construed as a misrepresentation of fact.

Perhaps, Swiech was confused by the court's paragraph following its explanation that reasonable minds could differ when it stated:

> "Notwithstanding the above, the Court believes that no reasonable attorney would believe the claims based solely on the fake website have any merit after contemplating this Court's rulings to date- Plaintiffs should remove any 'legal contentions' that the fake website forms any basis of liability."

The court was explaining that, although it was not sanctionable conduct to file the first amended complaint wherein the causes of action were based, at least in part, on the fake website, going forward, considering the context of the litigation and the court's prior rulings, the complaint should not include any allegations that the fake website is the basis of a cause of action.  In other words, the court understood why Plaintiffs included the allegations based on the fake website but also cautioned Plaintiffs they could not proceed on any legal theories of liability solely based the fake website.  In light of the evidence and argument before the court, such an approach (denying sanctions but admonishing Plaintiffs to remove certain allegations from the first amended complaint going forward) appears eminently reasonable.  As such, we conclude the superior court did not abuse its discretion in denying the third motion for sanctions.

26

## DISPOSITION

The judgment is affirmed.  Plaintiffs, Denning, and Turnbow are entitled to their costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.